## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE | § | CASE NO. 19-11529 |
| | § | |
| M & C PARTNERSHIP, LLC, | § | CHAPTER 11 |
| | § | |
| DEBTOR. | § | SECTION "A" |

### MEMORANDUM OPINION AND ORDER DISMISSING CASE

On April 15, 2021, this Court held a virtual evidentiary hearing (the "Hearing") to consider the *United States Trustee's Motion To Dismiss Case, or in the Alternative, To Convert Case to Chapter 7* (the "Motion To Dismiss"), [ECF Doc. 159], and the joinder to the Motion To Dismiss, [ECF Doc. 162], with an accompanying memorandum in support, [ECF Doc. 163], (together, the "Joinder"), filed by Girod LoanCo, LLC ("Girod").  The United States Trustee ("UST") and Girod seek to dismiss or convert the Debtor's case for cause pursuant to § 1112(b)(1), citing the statutory bases for cause in § 1112(b)(4)(A) & (J), as well as the additional basis that the Debtor's petition was filed in bad faith.  M & C Partnership, LLC (the "Debtor") filed an Opposition to the Motion To Dismiss and the Joinder.  [ECF Doc. 180].  Girod and the Debtor submitted post-Hearing briefs. [ECF Docs. 199 & 201].

Upon consideration of the pleadings, the evidence presented at the Hearing, the record in this case, and the applicable law, and for the following reasons, the Court GRANTS the UST's Motion To Dismiss and dismisses this case in its entirety.

### JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334.  The matters presently before the Court constitute core proceedings that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(A) & (O).  The venue of the Debtor's chapter 11 case is proper under 28 U.S.C. §§ 1408 and 1409(a).

As discussed in more detail below, after an evidentiary hearing, this Court denied confirmation of the Debtor's proposed plan of reorganization on March 15, 2021. [ECF Doc. 155]. On March 22, 2021, the UST filed the Motion To Dismiss. [ECF Doc. 159]. On March 29, 2021, the Debtor filed a Notice of Appeal of this Court's order denying confirmation. [ECF Doc. 170]. After the Hearing to consider the Motion To Dismiss, the Debtor, for the first time, summarily asserted that this Court cannot consider the UST's Motion To Dismiss to the extent that it asks this Court to dismiss or convert the Debtor's case pursuant to § 1112(b)(4)(J), which provides that the failure to confirm a plan in a reasonable amount of time constitutes cause. [ECF Doc. 201, ¶ 6]. The Debtor asserts that "[u]ntil a final order on appeal is entered § 1112(b)(4)(J) is not implicated." *Id*. But the Debtor's position ignores the nature of an order denying confirmation and the fact that a bankruptcy court is not entirely divested of jurisdiction when an appeal of a bankruptcy order is pending.

"A party can typically appeal as of right only from a final decision." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015). Because "[a] bankruptcy case involves an aggregation of individual controversies, many of which would exist as stand-alone lawsuits but for the bankruptcy status of the debtor . . . Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger cases." *Id*. (internal quotations and citations omitted). Thus, "[t]he current bankruptcy appeals statute reflects this approach:  It authorizes appeals as of right not only from final judgments in cases but from 'final judgments, orders, and decrees . . .  in cases and proceedings.'" *Id*. at 501–02 (citing 28 U.S.C. § 158(a).

For example, an order confirming a plan of reorganization "has preclusive effect, foreclosing relitigation of any issue actually litigated by the parties and any issue necessarily

determined by the confirmation order." *Id*. at 502.  Plan confirmation "alters the status quo and fixes the rights and obligations of the parties." *Id*.  In the same vein, "[w]hen confirmation is denied *and the case is dismissed as a result*, the consequences are similarly significant." *Id*. at 503.  Orders confirming plans of reorganization and those dismissing cases are final, appealable orders.

But "[d]enial of confirmation with leave to amend, by contrast, changes little." *Id*.  As explained by the Supreme Court:

> The automatic stay persists.  The parties' rights and obligations remain unsettled. . . .  "Final" does not describe this state of affairs.  An order denying confirmation does rule out the specific arrangement of relief embodied in a particular plan.  But that alone does not make the denial final any more than, say, a car buyer's declining to pay the sticker price is viewed as a "final" purchasing decision by either the buyer or the seller.  "It ain't over till it's over."

*Id*.  Recognizing that an order denying confirmation does not impose the same consequences that a final order brings into effect, the Supreme Court in *Bullard* held that orders denying confirmation are interlocutory orders, not final, appealable orders.  *See generally id*.[1]

---

[1]     The Court also relied on its statutory interpretation of the Bankruptcy Code as well as practical considerations in holding that orders denying confirmation are interlocutory orders:

> Several additional considerations bolster our conclusion that the relevant "proceeding" is the entire process culminating in confirmation or dismissal.  First is a textual clue.  Among the list of "core proceedings" statutorily entrusted to bankruptcy judges are "confirmations of plans."  28 U.S.C. § 157(b)(2)(L).  Although this item hardly clinches the matter for the Bank—the provisions purpose is not to explain appealability— it does cut in the Bank's favor.  The presence of the phrase "confirmation of plans," combined with the absence of any reference to denials, suggests that Congress viewed the larger confirmation process as the "proceeding," not the ruling on each plan.

> In Bullard's view the debtor can appeal the denial of the first plan he submits to the bankruptcy court.  If the court of appeals affirms the denial, the debtor can then revise the plan.  If the new plan is also denied confirmation, another appeal can ensue.  And so on.  As Bullard's case shows, each climb up the appellate ladder and slide down the chute can take more than a year.  Avoiding such delays and inefficiencies is precisely the reason for a rule of finality.  It does not make much sense to define the pertinent proceeding so narrowly that the requirement of finality would do little work as a meaningful constraint on the availability of appellate review.

As one court has stated: "The most important aspect of a bankruptcy appeal is what issues the appeal leaves behind for the lower court to resolve." *In re Ahmed*, 420 B.R. 518, 523 (Bankr. C.D. Cal. 2009). Unless otherwise ordered by a higher court, "the bankruptcy court may . . . issue any other appropriate orders during the pendency of an appeal to protect the rights of all parties in interest." FED. R. BANKR. P. 8007(e). In other words, "the lower court retains full jurisdiction over any matter unrelated to the appeal." *In re Ahmed*, 420 B.R. at 523. "In addition to its remaining jurisdiction on matters unrelated to the appeal, a bankruptcy court retains substantial jurisdiction as to the order that is the subject of the interlocutory appeal." *Id*. "The appeal only deprives the bankruptcy court of the power to alter, expand or vacate the order at issue." *Id*. (citing *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1190 (9th Cir. 2000)). "The [lower] court retains jurisdiction over all other matters that it must undertake to implement or enforce the judgment or order [that is on appeal]." *Sherman v. SEC (In re Sherman)*, 491 F.3d 948, 967 (9th Cir. 2007).

The decision in *Hagel v. Drummond (In re Hagel)*, 184 B.R. 793 (B.A.P. 9th Cir. 1995), is illustrative here. The bankruptcy court issued an order denying confirmation of a plan of reorganization and the debtors were given leave to file an interlocutory appeal, which they did. *Id*. at 795. While the appeal was pending, the trustee moved to dismiss the case and the court granted the motion. *Id*. The debtors moved for reconsideration of the order dismissing their case, which the court denied, and the debtors appealed that order. *Id*. The debtors argued to the Bankruptcy Appellate Panel that the bankruptcy court lacked jurisdiction to dismiss their case because the dismissal was based on alleged deficiencies in the rejected plan found by the bankruptcy court in its order denying confirmation, which was pending on appeal. *Id*. at 798. While acknowledging

---

*Bullard*, 575 U.S. at 503–04.

4

that a bankruptcy court "cannot vacate or modify an order which is on appeal," the Panel also observed:

> It is equally established, however, that while an appeal of an order is pending, the trial court retains jurisdiction to implement or enforce the order. This is true because in implementing an appealed order, the court does not disrupt the appellate process so long as its decision remains intact for the appellate court to review. Accordingly, courts have recognized a distinction between acts undertaken to enforce the judgment, which are permissible, and acts which expand upon or alter it, which are prohibited.

*Id.* The Panel affirmed the order denying confirmation, but also, in affirming the order dismissing the case, held that "[b]ecause dismissal of the Debtors' case was not an act expanding upon or altering the order denying plan confirmation, the bankruptcy court had jurisdiction to dismiss the case while the order denying confirmation of the plan was on appeal." *Id.* at 799.

In view of the interlocutory nature of this Court's order denying confirmation that is currently on appeal,[2] the foregoing discussion and cited authorities, and the fact that the Debtor has not requested a stay of this Court's order denying confirmation pending appeal pursuant to Bankruptcy Rule 8007, the Court finds that it retains jurisdiction to consider the UST's Motion To Dismiss even to the extent that it asks this Court to dismiss or convert the Debtor's case pursuant to § 1112(b)(4)(J).

---

[2]     The Court observes that the Debtor filed its Notice of Appeal of this Court's order denying confirmation pursuant to Bankruptcy Rule 8003 which governs appeals as of right rather than Bankruptcy Rule 8004, which governs appeals by leave, as did Girod as well when it filed its Notice of Cross-Appeal on April 9, 2021.  [ECF Docs. 170 & 181].

# FINDINGS OF FACT[3]

## A. The Debtor's Business and Capital Structure

The Court's findings regarding the prepetition activities of the Debtor are taken from the Court's prior findings documented in its Memorandum Opinion dated March 15, 2021. [ECF Doc. 155]. The Debtor is a Louisiana limited liability company with a sole member-manager, George Cella ("Cella"). The Debtor owns and maintains a 5,000 square-foot, three-unit strip mall located at 3617 Williams Blvd., Kenner, Louisiana (the "Property"), which Cella stated he built approximately forty years ago. The Debtor's income stems from the rent obtained from three tenants on the Property, for a total of approximately $8,812 per month in rent and common-area-maintenance charges.

In the years prior to the Debtor's decision to file for bankruptcy protection, First NBC Bank ("FNBC") made loans in the principal aggregate amount of approximately $2.5 million to affiliates of the Debtor—Florida Street Market, LLC, Riverwalk Development, LLC and Sister Stuff, LLC—with George Cella signing as the manager of all three entities (the "Florida Street Market Notes"). The repayment of the Florida Street Market Notes was secured by property of those three obligor-affiliates. Even though the Debtor is not an obligor on the Florida Street Market Notes, it later pledged the Property as additional collateral to secure repayment of the Florida Street Market Notes, mortgaging the Property to FNBC.

---

[3]     These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted and shall be construed and deemed as findings of fact.

On Friday, April 28, 2017, the Louisiana Office of Financial Institutions closed FNBC and the Federal Deposit Insurance Corporation ("FDIC") was named Receiver.  Thereafter in 2017, Girod acquired the Florida Street Market Notes from the FDIC.

In March 2019, Girod made demand on the primary obligor of the Florida Street Market Notes as well as on Cella as guarantor of that debt, asserting that the loans were in default and demanding immediate payment of all sums due, plus interest and fees.  Included in its demand was a notification to the Debtor that Girod intended to institute foreclosure proceedings on the Property, part of the collateral securing repayment of the Florida Street Market Notes.  According to the Debtor, on May 24, 2019, Girod filed a foreclosure action against the Debtor to foreclose on the Property.

### B.  The Debtor's Bankruptcy Filing

On June 5, 2019, the Debtor filed for bankruptcy relief under chapter 11 of the Bankruptcy Code and designated its case as a single asset real estate case.  [ECF Doc. 1].  The Debtor continues to operate its business as a debtor-in-possession, and no creditors' committee has been constituted.

On June 27, 2019, the Debtor filed its Schedules, listing Girod as the only creditor holding a claim secured by the Property.  [ECF Doc. 33].  The Debtor listed approximately $5,000 in priority unsecured tax debt and only two non-priority unsecured creditors on its Schedules:  Latter & Blum, a real estate manager, holding a claim for $7,992, and River Parish Disposal, a waste management company, holding a claim of $462.18.  [ECF Doc. 34].  In its Order of July 26, 2019, the Court set September 24, 2019, as the deadline for non-governmental creditors to file proofs of claim against the estate and January 22, 2020, as the deadline for filing of governmental proofs of claim (the "Bar Date") and approved the form of notice of the Bar Date.  [ECF Doc. 47].  A review of the claims register indicates that only one proof of claim has been filed against the estate:

Girod's proof of claim asserting a secured claim against the estate for $570,000, the value of the Property.  *See* Girod, Ex. 2.  To date, no objections have been filed to Girod's proof of claim.

Pursuant to § 1121 of the Bankruptcy Code, the Debtor has the exclusive right to file a plan of reorganization for the first 120 days of the case and may seek extensions upon a showing of cause.  *See* 11 U.S.C. § 1121(b), (d).  But for a single asset real estate debtor, § 362(d)(3) of the Bankruptcy Code states that a court may terminate the automatic stay if the debtor has not filed a plan of reorganization within 90 days of filing its petition or the debtor has begun making monthly payments "equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate."  11 U.S.C. § 362(d)(3)(B)(ii).  Here, the Debtor did not file a plan within 90 days of the petition date and it did not make adequate protection payments to Girod.

On October 3, 2019, the Debtor filed a motion to extend the exclusive period for filing a chapter 11 plan and disclosure statement, [ECF Doc. 61], which the Court granted, re-setting the exclusivity period to expire on December 23, 2019, [ECF Doc. 75].  On December 23, 2019, the Debtor, with the consent of Girod and the UST, filed a second motion to extend the exclusive period for filing a plan and disclosure statement, which the Court granted, extending the deadline to December 31, 2019.  [ECF Doc. 82].[4]  On December 31, 2019, the Debtor filed its first chapter 11 plan of reorganization (the "First Plan") and accompanying disclosure statement.  [ECF Docs. 84 & 85].  The First Plan proposed to fund plan payments "from future rental income and proceeds of Causes of Action," and treated the following classes thusly:

> (a) Class 1 Priority Tax Claims:  Treated pursuant to 11 U.S.C. § 1129(a)(9) (but not specified); considered unimpaired and deemed to accept the First Plan

---

[4]      Pursuant to 11 U.S.C. § 1121(d)(2)(B), the exclusive period allowed to the Debtor for gaining acceptance of a plan expired on February 5, 2021, which represents a date 20 months after the date of filing of the bankruptcy case.

(b) Class 2 Girod Secured Claim:  "The Allowed Girod Secured Claim shall be reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code . . . .  Therefore, the Class 2 Claimant will not have the right to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan."

(c) Class 3 Allowed General Unsecured Claims:  Will be paid in full within six months after the Effective Date of the confirmed First Plan; considered impaired but "in the event that none of the Class 3 Claimants submit a timely ballot with respect [to] Class 3, Class 3 will be deemed to have accepted the Plan.[5]

(d) Class 4 Equity Interests:  Cella would retain all of his interests in the Debtor; considered unimpaired and deemed to accept the First Plan.

First Plan, at 1 & §§ 4.1–4.4.

On May 8, 2020, the Debtor amended its plan (the "Second Plan") and disclosure statement.  [ECF Docs. 99 & 100].  No changes were made to the treatment of each of the four classes; the amended disclosure statement stated that the "Debtor believes that no Claims exist in favor of any taxing authorities" in Class 1.  [ECF Doc. 100, at 11].  The Court approved the amended disclosure statement on June 1, 2020, and set a hearing to consider confirmation of the Second Plan on August 17, 2020, with ballots accepting or rejecting the Second Plan due on August 14, 2020.  [ECF Doc. 103].  Due to the retirement of the judge originally presiding over this case, the hearing on confirmation and deadlines associated therewith were continued.  [ECF Doc. 113].

---

[5]     The Court notes that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the Appropriate Official Form."  FED. R. BANKR. P. 3018(c).  Further, § 1126(c) of the Bankruptcy Code states:  "A class of claims has accepted a plan if such has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class . . . ."  Only one circumstance exists that allows creditors to be "deemed to accept" a plan.  Section 1126(f) of the Bankruptcy Code provides that a creditor that is not impaired is conclusively deemed to have accepted the plan.

But no provision exists in the Bankruptcy Code that would allow a non-voting impaired creditor to be deemed to accept the plan.  Case law also supports that understanding and, generally, "a creditor who does not vote is not deemed to have accepted the plan and the creditor's acceptance cannot be implied."  *In re Castaneda*, No. 09-50101, 2009 WL 3756569, at *1 (Bankr. S.D. Tex. Nov. 2, 2009).

Because this case was filed contemporaneously with an affiliate case, *In re Cella III, LLC*, No. 19-11528, the hearing on confirmation of the Second Plan was further continued several times pursuant to the parties' requests in the *Cella* matter, [ECF Docs. 116 & 119], but the two cases have never been jointly administered under Bankruptcy Rule 1015(b) or substantively consolidated under §§ 105(a) or 1123(a)(5)(C) of the Bankruptcy Code.

On November 17, 2020, the Debtor again amended its plan (the "Third Plan") and filed a supplemental disclosure statement. [ECF Docs. 128 & 130]. The Third Plan changed the treatment of Girod's secured claim and the general unsecured class:

> (a) Class 2 Girod Secured Claim. The Debtor classified Girod's claim as impaired and proposed to pay Girod's allowed claim of $570,000 by the Debtor's issuance of a promissory note with a six-year term, the repayment of which to be secured by the Property. The debt would be amortized over thirty years at 4.75% interest per annum, with interest-only payments for the first year and a balloon payment at the end of the sixth year after the Effective Date. The amount of the balloon payment at the end of the term of the note would be $521,539.93.
>
> (b) Class 3 General Unsecured Claims. The Debtor identified only one creditor in this class, Latter & Blum, and proposed to pay it 75% of its allowed claim within fourteen dates after the Effective Date.

Third Plan, §§ 4.2 & 4.3; [ECF Doc. 130, at 4]; [ECF Doc. 153, ¶ 6]. On November 29, 2020, this Court set January 7, 2021, as the date the Court would consider confirmation of the Third Plan, with objections to the Third Plan and ballots accepting or rejecting the Third Plan due on December 31, 2020. [ECF Doc. 131].

Upon considering the terms of the Third Plan, the evidence presented at the confirmation hearing on January 7, 2021, the objections to confirmation filed by Girod, the record in the case, and the applicable law, and for the reasons contained in this Court's Memorandum Opinion dated March 15, 2021, the Court denied confirmation of the Third Plan, finding that the Debtor had not

met its burden to show that the Third Plan was feasible and treated Girod's secured claim fairly and equitably. [ECF Doc. 155]. Among other findings, the Court specifically found that

> the debtor presented no evidence regarding any source of outside funding to make the balloon payment or whether the Debtor will have enough equity in the Property by the end of Year 6 to attract a re-financier. . . . The projections of the Debtor's finances do not contemplate that any reserve will be available for capital maintenance costs on the 40-year-old property or leasing costs over the next six years. Rather, the Plan proposes that equity will take all net income in the form of a salary after each monthly payment to Girod. No evidence is before the Court regarding the expected value of the Property after six years or the ability of the Debtor to obtain third-party financing to pay the balloon. Further, there is no contribution proposed by equity to fund the $521,539.93 balloon payment.

[ECF Doc. 155, at 17–19].

### C. The UST's Motion To Dismiss

A week later, on March 22, 2021, the UST filed the Motion To Dismiss, asserting that the Debtor is experiencing continuing losses (because its monthly operating reports indicate that it may not have the funds to pay administrative expenses that continue to accrue) and that it does not have a reasonable likelihood of reorganization. *See* Motion To Dismiss, ¶¶ 13–19. The UST noted the expedited timeframes applicable to single asset real estate cases. *See id.* at 4 n.1. At the Hearing, the UST relied on the record to demonstrate that this "simple" case—one which has one asset and essentially one creditor—has been lingering in bankruptcy for approximately 22 months and has failed to confirm a plan in that timeframe. *See* Hr'g Tr. Min. 9:32:35–35:03 (Apr. 15, 2021). The UST expressed concern that the terms of the proposed plans of the Debtor had "changed relatively little" over time and the Debtor's Third Plan was ultimately denied, meaning that no real progress had been made in the case in over two years, leaving the Debtor with only "administrative drag." *Id.* Based on the record in this case, including the recent denial of confirmation, the UST contends that cause exists pursuant to 11 U.S.C. § 1112(b)(4)(A) and (J) to dismiss the Debtor's case or convert it to one under chapter 7.

Girod filed a Joinder to the Motion To Dismiss. In addition to echoing the UST's arguments asserting that cause exists under § 1112(b)(4)(J) to dismiss the case, Girod asserts that the case was not filed in good faith and that, because this case is a single asset real estate case and Debtor cannot confirm and effectuate a plan, Girod would be entitled to an order terminating the automatic stay under § 362(d)(3). [ECF Doc. 163, at 2–6 (citing *In re Pensignorkay, Inc.*, 204 B.R. 676 (1997))]. At the Hearing, Girod asserted that the case should be dismissed rather than converted, to avoid further accrual of administrative expenses by the estate. *See* Hr'g Tr. Min. 09:38:20–38. Girod presented testimony from Denis Stratford, Senior Vice President and Asset Manager for Capital Crossing Co, the authorized servicer of loans held by Girod.

The Debtor opposes conversion or dismissal of the case. In its Opposition to the Motion To Dismiss, it argues that the UST and Girod cannot establish either that the Debtor is experiencing "substantial or continuing loss to or diminution of the estate" or "the absence of a reasonable likelihood of rehabilitation"—both of which are required to dismiss or convert the case under § 1112(b)(4)(A). *See* Opposition, at 3–5. The Debtor further asserts that, even if the UST and Girod could show "cause" to dismiss or convert the case, the Debtor can demonstrate "unusual circumstances" pursuant to § 1112(b)(2) that would prohibit the Court granting the relief sought. *See id.* at 6. The Debtor did not address in its Opposition the UST's arguments regarding § 1112(b)(4)(J) or Girod's arguments regarding bad-faith filings.

On April 14, 2021, the day before the Hearing, the Debtor filed a new plan of reorganization, amending the Third Plan (the "Fourth Plan"), [ECF Doc. 191], and the Court granted the Debtor leave to amend its exhibit list for the Hearing to include the Fourth Plan, [ECF Doc. 195]. The Debtor's Fourth Plan alters its proposed treatment to Girod, offering Girod two options for repayment of its allowed claim of $570,000 that it can choose from on or before April

12

28, 2021. *See* Fourth Plan, § 4.2. The Fourth Plan provides that if Girod selects neither option before that date, then the Debtor will pursue Option 1. *See id.* Option 1 proposes payment in full within four days after the Effective Date from proceeds of a new loan obtained by the Debtor from Resource Bank and secured by the Property. *See id.* §§ 4.2 & 6.1. Option 2 classifies Girod's claim as impaired and proposes to pay Girod's allowed claim of $570,000 through the Debtor's issuance of a promissory note, secured by the Property, with a five-year term. The debt would be amortized over 25 years at 5% interest per annum, with a balloon payment at the end of the fifth year after the Effective Date. *See id.* § 4.2.

At the Hearing, the Debtor asserted that this Court should allow this case to move forward to a confirmation hearing on the Debtor's Fourth Plan, because, the Debtor contends, it now has the potential to pay Girod in full within days of the Effective Date by refinancing the debt. *See* Hr'g Tr. Min. 13:01:19–04:52. In support of that contention, the Debtor presented the Affidavit of Douglass M. Ferrer (the "Ferrer Affidavit"), an Executive Vice President of Resource Bank, and a commitment letter signed by Ferrer and dated April 8, 2021, outlining the terms of proposed refinancing, whereby Resource Bank, under certain terms and conditions, would loan the Debtor $570,000 to refinance the Girod debt (the "Commitment Letter"). *See* Exs. A & B.[6] The Debtor also argued that Girod would not be prejudiced by affording the Debtor more time to reorganize, as the debt owed to Girod was secured by both the Debtor's Property as well as non-debtor

---

[6]     Girod objected to the admission of the Commitment Letter on the basis of hearsay. The Court found that the Ferrer Affidavit satisfied the Debtor's burden under Federal Rule of Evidence 803(6). Both the Ferrer Affidavit and the Commitment Letter were disclosed by the Debtor to Girod pursuant to this Court's Order of April 1, 2021, which required the parties to file into the record and electronically serve upon their opponents a list of all witnesses who may be or will be called to testify at trial, and a list of all exhibits that may or will be used, with the exception of impeachment exhibits, not later than April 12, 2021, at 5:00 p.m. [ECF Doc. 176]. Recognizing the expedited nature of most bankruptcy proceedings, and relying on the analysis regarding self-authenticating documents in *Baerg Real Property Trust v. Garland Solution, LLC (In re Baerg Real Property Trust)*, No. 16-03160, 2018 WL 1614192 (Bankr. N.D. Tex. Mar. 30, 2018), the Court overruled Girod's objection and admitted the Commitment Letter into evidence.

affiliates' property.  *See* Hr'g Tr. Min. 13:01:19–04:52.  Martha Sassone, who is not a member or a manager of the Debtor, but has a personal relationship with Cella, testified on behalf of the Debtor, as someone who "assist[s] in the management" of the Debtor and has professional relationships with the tenants.  Hr'g Tr. Min. 11:35:14–37.  The Debtor presented no other witnesses.

After the Hearing, the Court took the matter under submission, but allowed limited post-trial briefs to be filed within the week to address the sole issue of "whether the Court may consider property not owned by the Debtor in determining whether a secured lender enjoys an equity cushion in estate property securing repayment of the debt."  [ECF Doc. 197].  Girod and the Debtor filed post-trial briefs.  [ECF Docs. 199 & 201].[7]

## CONCLUSIONS OF LAW

### A.  Standards for Dismissal or Conversion Under § 1112(b)

Section 1112 of the Bankruptcy Code requires a bankruptcy court to dismiss a case filed under chapter 11 or convert it to one under chapter 7, "whichever is in the best interests of and the estate, if the movant establishes cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."  11 U.S.C. § 1112(b)(1).  "Whether cause exists under § 1112(b) and, if so, whether dismissal is appropriate are questions left to the sound discretion of the bankruptcy court."  *In re New Towne Dev., LLC*, 404 B.R. 140, 146 (Bankr. M.D. La. 2009) (citation omitted).

The Bankruptcy Code does not expressly define "cause" as it is used as § 1112(b)(1), but it does set forth a non-exhaustive list of examples of events that may constitute cause, including

---

[7]     The Debtor's brief exceeded the scope of the Court's Order of April 16, 2021.  Only three paragraphs of the brief addressed the issue requested by the Court, [ECF Doc. 201, ¶¶ 15–17]; the remainder repeated arguments made at the Hearing or addressed issues that the Debtor omitted from its Opposition to the Motion To Dismiss.

those relied upon by the UST here: "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," and "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court." 11 U.S.C. § 1112(b)(4)(A) & (J). "In determining whether there is a continuing loss to or diminution of the estate, courts look beyond a debtor's financial statements and 'make a full evaluation of the present condition of the estate.'" *In re Briggs-Cockerham, L.L.C.*, No. 10-34222, 2010 WL 4866874, at *5 (Bankr. N.D. Tex. Nov. 23, 2010) (quoting *In re Moore Constr., Inc.*, 206 B.R. 436, 437–38 (Bankr. N.D. Tex. 1997)).

In addition to those bases for cause, Girod also relies on an uncodified ground for cause, to wit, that the Debtor's case was filed in bad faith. "It is well-established in this and other circuits that a debtor's bad faith in filing a chapter 11 petition constitutes 'cause' for dismissal under § 1112." *In re Briggs-Cockerham, L.L.C.*, 2010 WL 4866874, at *3 (citing *In re Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir. 1986)).

> With respect to "bad faith" as "cause" to dismiss a chapter 11 case, courts typically consider several factors: (1) whether the debtor has only a single asset, such as a tract of land; (2) whether its assets are fully encumbered; (3) whether the debtor has any employees, cash flow and source of income to fund a plan; (4) whether the debtor has any unsecured creditors and the relative size of their claims; (5) whether there has been a foreclosure action on the debtor's assets.

*Id.* at *5. Because that list of factors is not always relevant to every case, "the Fifth Circuit has noted that 'determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities.'" *Id.* (quoting *In re Little Creek Dev. Co.*, 779 F.2d at 1072).

The UST and Girod bear the burden of showing that cause exists to dismiss or convert the case. *See, e.g.*, *In re Zamora-Quezada*, 622 B.R. 865, 880 (Bankr. S.D. Tex. 2017). "One ground . . . is sufficient, standing alone, to establish cause under the statute." *In re Colon Martinez*, 472

B.R. 137, 144 (B.A.P. 1st Cir. 2012).  If the UST and Girod can show cause to dismiss or convert, the burden then shifts to the Debtor to demonstrate "unusual circumstances" for why the case should not be dismissed or converted.

> The exception to mandatory dismissal set forth in § 1112(b)(2) applies if (i) a party in interest objects to the dismissal and establishes a reasonable likelihood that a plan will be confirmed within a reasonable time, (ii) the grounds supporting dismissal include an act or omission of the debtor for which there exists a reasonable justification, and (iii) such act or omission will be cured within a reasonable period of time.

*In re Briggs-Cockerham, L.L.C.*, 2010 WL 4866874, at *3 (citing *In re Gateway Access Solutions, Inc.*, 374 B.R. 556 (Bankr. M.D. Pa. 2007)).

### B.   The Debtor's Case Warrants Dismissal

#### 1.   The UST and Girod have demonstrated cause exists to dismiss or convert

"Although the Bankruptcy Code does not specify a fixed time for filing a plan of reorganization in ordinary chapter 11 cases, courts interpret § 1112(b)(4)(J) as requiring individual chapter 11 debtors to file and confirm a plan of reorganization within a reasonable period of time." *Samuels v. Wilmington Sav. Fund Soc'y*, No. 19-003, 2019 WL 6211209, at *6 (B.A.P. 1st Cir. Nov. 19, 2019) (internal quotations and citations omitted).  The inclusion of § 362(d)(3) in the Bankruptcy Code informs this Court regarding what may be "a reasonable period of time" in a single asset real estate case:

> Section 362(d)(3) gives very special deference to the mortgagee of single-asset real estate, in an express entitlement to receive payments on contractual interest from the debtor once the first 90 days of the case have passed.  The only specific alternative available to the debtor-owner is to get the reorganization case pushed forward substantially by filing an arguably-confirmable plan within that first 90 days.

> The legislative history for § 362(d)(3) is meager.  However, the terse extant history and the statute's own structure suggest that Congress was concerned about the relative unfairness of lengthy delay in Chapter 11 cases involving single-asset real estate projects; that one of its goals aims to expedite the proposal of meritorious

16

> plans of reorganization in such cases; and that, where the case does not early kick forward toward confirmation, a debtor must compensate its mortgagee for the time-value of the mortgagee's debt investment, by the payment of interest at the original contractual rate.

*In re Heather Apartments Ltd. P'ship*, 366 B.R. 45, 49–50 (Bankr. D. Minn. 2007) (internal quotations and citations omitted).

"[A] debtor's inability to accomplish substantive progress toward confirmation inherently carries the risk of unreasonable and undue delay, which is nearly always prejudicial toward creditors . . . ." *Samuels*, 2019 WL 6211209, at *6 (quoting *Synovus Bank v. Brooks (In re Brooks)*, 488 B.R. 483, 490 (Bankr. N.D. Ga. 2013)). "Therefore, 'failure to confirm a plan itself constitutes cause for dismissing a chapter 11 petition.'" *Id.* (quoting *Aleshire v. Wells Fargo Bank, N.A.*, 589 B.R. 154, 162 (N.D. Ill. 2018)). The record reflects that this single asset real estate debtor has failed to confirm a plan in 22 months. And yet, no compensation for the delay has been given to Girod, the mortgagee of single-asset real estate. Thus, the UST and Girod have satisfied their burden to show that cause exists to dismiss or convert this case pursuant to § 1112(b)(4)(J). *See In re CCT Commc'ns, Inc.*, 420 B.R. 160, 174 (Bankr. S.D.N.Y. 2009) (finding that movant sustained its burden of proof that cause exists under § 1112(b)(4)(J) when debtor failed to confirm a plan within the statutory deadline).[8]

---

[8]    The UST also asserts that cause exists to dismiss or convert the case pursuant to § 1112(b)(4)(A), "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." The UST makes that assertion based upon the Debtor's ongoing accrual of professional fees in the midst of a stagnant case. *See* Motion To Dismiss, ¶¶ 15–19; Hr'g Tr. Min. 9:32:35–35:03. Courts have held that, generally, "the mere accrual of professional fees does not constitute a continuing loss to the estate." *In re TMT Procurement Corp.*, 534 B.R. 912, 920 (Bankr. S.D. Tex. 2015) (citing *In re Gabriel Techs.*, 2013 WL 4672785, at *3 (Bankr. N.D. Cal. Aug. 30, 2013); *In re Miller*, 496 B.R. 469, 479 (Bankr. E.D. Tenn. 2013)). The monthly operating reports indicate, and the Debtor confirmed at the Hearing, that, after 22 months, the Debtor has earned a profit of approximately $1500 after the expenses of the Debtor (exclusive of any debt service) and Cella's salary are paid. *See* Hr'g Tr. Min. 11:08:54–10:39. Although the earnings and expenditures of the Debtor factored into this Court's decision regarding the lack of feasibility of the Third Plan, [ECF Doc. 155, at 13–18], the Court cannot conclude on the evidence presented at the Hearing that the Debtor is experiencing "substantial or continuing loss to or diminution of

2. *The Debtor has failed to demonstrate it can meet the requirements of § 1112(b)(2) to avoid dismissal or conversion*

Once a party demonstrates that cause exists to convert or dismiss the case under § 1112(b), this Court is required to dismiss or convert the case unless it finds and specifically identifies

> unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>
> > (A)  there is a reasonable likelihood that a plan will be confirmed . . . within a reasonable period of time; and
> >
> > (B)  the grounds for grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
> >
> > > (i)  for which there exists a reasonable justification for the act or omission; and
> > >
> > > (ii)  that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

a.  The Court does not find unusual circumstances exist

"Bankruptcy courts have significant discretion in making the determination as to whether there are unusual circumstances that should prevent dismissal." *In re Triumph Christian Ctr., Inc.*, 493 B.R. 479, 496 (Bankr. S.D. Tex. 2013) (citing *In re 1031 Tax Grp., LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007)). "Although a finding of unusual circumstances is within the court's discretion, the word 'unusual' contemplates facts that are not common to chapter 11 cases

---

the estate" to find that cause for dismissal or conversion exists under § 1112(b)(4)(A). The Debtor is not losing money, but it is not making money either.

  Likewise, the record before this Court does not suggest that the Debtor initially filed its case in bad faith without a legitimate bankruptcy purpose. But, as discussed further herein, 22 months later, the Court finds, based on post-petition events, that the Debtor lacks a reasonable prospect of achieving confirmation of a plan of reorganization in a reasonable amount of time. Therefore, the UST and Girod are entitled to the relief they seek pursuant to § 1112(b)(4)(J).

generally." *Id.* (internal quotations and citations omitted). "Such conditions must not only be unusual, they must also demonstrate that dismissal or conversion is not in the best interests of creditors and the estate." *In re Wallace*, No. 09-20496, 2010 WL 378351, at *7 (Bankr. D. Idaho Jan. 26, 2010).

The Debtor asserts that "the fact that Girod is objecting to full repayment of its claim [either through a payment plan or third-party refinancing] constitutes an 'unusual circumstance'" that establishes that dismissal or conversion is not in the best interests of creditors or the estate. Opposition, ¶ 10. But a contentious dispute between a debtor and a creditor is not an unusual circumstance in a chapter 11 case. *See, e.g., In re Wallace*, 2010 WL 378351, at *7. The Debtor further contends that Girod would not be prejudiced by affording the Debtor more time to reorganize, as the debt owed to Girod is secured by both the Debtor's Property as well as non-debtor affiliates' property. *See* Hr'g Tr. Min. 13:01:19–04:52; [ECF Doc. 201, ¶ 15 ("The nondebtor collateral and Girod's collateral cushion discussed at the hearing are also relevant to the analysis of Girod's bad faith.")]. Essentially, the Debtor encourages Girod to look elsewhere for repayment. In the context of a lift-stay motion under § 362(d)(2), a bankruptcy court is only required to examine "the relative value of the property and the debt it secures." *McManus v. Cadle Co. (In re McManus)*, No. 93-03849, 1994 WL 397944, at *1 (5th Cir. 1994). And in considering a motion to lift the stay for "cause" under § 362(d)(1), it is true that a bankruptcy court can inquire "into whether a creditor has an alternative means for recovery" in ascertaining whether cause exists to grant relief. *See id.* But this Court has not been presented with any case law in which a court considered a single creditor's alternative means of recovery when evaluating whether unusual circumstances exist under § 1112(b)(2). As discussed below, the fact that this Debtor essentially has only one creditor whose lien encumbers Debtor's sole asset weighs in favor of granting the

Motion To Dismiss here, regardless of whether or not that creditor has alternate avenues for recovery.[9]

                          **b. The Debtor has not shown a reasonable likelihood that a plan will be confirmed within a reasonable period of time**

The Debtor relies on its recently filed Fourth Plan and the April 8, 2021 Commitment Letter to show that a plan will be confirmed in a reasonable time, and show that it can timely cure the grounds for cause as required by § 1112(b)(2)(A) and (B). Although the Commitment Letter purports to be an agreement to refinance the debt secured by the Property, it is non-binding and is "subject to the condition that there shall not have been any material adverse change (Bank's sole discretion) in the conditions, financial or otherwise, of the Borrower that Bank relied or utilized in making its decision to the commitment." Ex. A. It also requires "[c]ancelation of all related Subordinate Debt Agreements, Deficiency Notes and/or Forbearance Agreements related [to] the collateral taken as part of this restructure." *Id.*

The Commitment Letter is signed by Ferrer, but the only testimony regarding the Commitment Letter was provided by Martha Sassone. Sassone testified that she attended a meeting with Cella and Ferrer on or about April 5, 2021, to discuss refinancing. *See* Hr'g Tr. Min. 12:42:34–55:36. Under cross-examination, Sassone testified regarding the state court action in which Girod is litigating claims against Cella and non-debtor affiliates related to debts allegedly owed to Girod. *See id.* Sassone testified that she was aware that the state court entered its Reasons

---

[9]       And to the extent that the Debtor has made an equitable marshaling argument, that argument is misplaced. "The equitable doctrine of marshaling rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds." *Bank One, Tex., Nat'l Ass'n v. L&L Oil Co.*, No. 95-0673, at *2 (E.D. La. 1996) (quotations and citation omitted). The purpose of that doctrine is "to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security." *Peoples State Bank v. Gen. Elec. Capital Corp. (In re Ark-La-Tex Timber Co.)*, 482 F.3d 319, 331 n.6 (quoting *Meyer v. United States*, 375 U.S. 233, 237 (1963)). Thus, the doctrine may only be invoked by a junior lienholder, not a debtor or obligor.

for Judgment on March 31, 2021, granting summary judgment in favor of Girod and finding Cella and the non-debtor affiliates to be liable to Girod for significant amounts owed under several promissory notes. *See id.* Sassone further testified under cross-examination that, although she and Cella had not received the state court's Reasons for Judgment until "several days" after its issuance, the Reasons for Judgment was not discussed with Ferrer at the April 5 meeting. *See id.* And she further stated that she did not know if Resource Bank would consider the Reasons for Judgment to be a "material adverse change" that would affect Resource Bank's willingness to refinance the Debtor's debt owed to Girod. *See id.*

As to the provision in the Commitment Letter requiring "[c]ancellation of all related Subordinate Debt Agreements, Deficiency Notes and/or Forbearance Agreements related to the collateral taken as part of this restructure," Ex. A, Sassone testified that she had no information regarding what Resource Bank would require under that provision, and further stated that she did not know whether Cella is required to execute a personal guaranty as a condition to obtain refinancing from Resource Bank, *see* Hr'g Tr. Min. 12:42:34–55:36. Sassone did state that she was aware that Resource Bank finances obligations of certain non-debtor affiliates also guaranteed by Cella. *See id.*

It is true that the filing of a plan which proposed to pay all creditors in full as of the effective date of the plan has been found to constitute an "unusual circumstance" preventing dismissal. *See, e.g., In re Orbit Petroleum, Inc*., 395 B.R. 145, 149 (Bankr. D.N.M. 2008). But that case was in a much different posture than this one. The *Orbit Petroleum* case was three months old when the motion to dismiss was filed; the hearing to determine the adequacy of the debtor's first disclosure statement was scheduled for month eight; and the proposed recapitalization plan that would pay

out all creditors called for the debtor to enter into a loan agreement with its parent company. *See id.* at 146–47. And *Orbit Petroleum* was not a single asset real estate case.

Here, the testimony regarding the Commitment Letter left the Court with more questions than answers about the certainty of the proposed funding and its terms, and the Debtor did not call any witnesses from Resource Bank who could have provided clarity. Though the Court recognizes that the Hearing was not the forum to fully consider the feasibility of the Fourth Plan, it is nevertheless the Debtor's burden at this stage to show "a reasonable likelihood that a plan will be confirmed . . . within a reasonable period of time" in order to avoid dismissal or conversion. 11 U.S.C. § 1112(b)(2)(A). Due to the significant, unresolved concerns and contingencies surrounding the proposed funding, the Court finds that the Debtor did not carry its burden of showing a concrete enough chance of successfully refinancing to create a reasonable likelihood that the plan would be confirmed.

For those reasons, the Debtor has not met its burden under § 1112(b)(2) to stave off dismissal or conversion.

### 3. The Court will dismiss the case rather than convert it to chapter 7

"The Bankruptcy Code does not allow a debtor an unlimited amount of time to confirm a plan or an unlimited number of attempts at plan confirmation, particularly in single asset real estate cases." *In re Creekside Senior Apartments, L.P.*, 489 B.R. 51, 61 (B.A.P. 6th Cir. 2013).[10] Congress intended single asset real estate cases to move expeditiously. The Court is not insensitive to the challenges the past year has presented to this Debtor, but the Court agrees with the UST:

---

[10]     Notably, the *Orbit Petroleum* court inserted a backstop of one year from the petition date when it denied creditors' motion to dismiss and allowed the proposed 100% plan to move forward to confirmation: "In the event a plan is not confirmed by February 27, 2009, the Court finds that dismissal, rather than conversion or the appointment of a chapter 11 trustee or examiner is in the best interest of creditors and the estate." *In re Orbit Petroleum*, 395 B.R. at 149.

This is a relatively simple case.  The Debtor is a single asset real estate debtor with essentially one creditor, Girod, whose lien encumbers the sole asset.  The Debtor has no employees.  But it has been afforded almost two years to reorganize.

If the recently obtained refinancing opportunity is firm, the Debtor will be able to negotiate with Girod outside of the bankruptcy process, but this Court finds that to allow the Debtor to linger further in this setting would serve no legitimate bankruptcy purpose.  To convert this case to one under chapter 7 would simply invite further administrative expense upon the Debtor; therefore, the Court finds that dismissing the case is in the best interests of creditors and the estate.

## CONCLUSION

For all of the reasons stated above, the Court GRANTS the *United States Trustee's Motion To Dismiss Case, or in the Alternative, To Convert Case to Chapter 7*, [ECF Doc. 159], and the joinder to the Motion To Dismiss, [ECF Doc. 162], and dismisses the case in its entirety.

New Orleans, Louisiana, this 28th day of April, 2021.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE